UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH POETT,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 08-0622<br>CKK/DAR |

**MEMORANDUM OPINION AND ORDER**

Pending for determination by the undersigned Magistrate Judge is Plaintiff's Motion for Attorney's Fees and Costs of Suit ("Plaintiff's Motion") (Document No. 23). Upon consideration of the motion, the memoranda in support thereof and in opposition thereto, and the entire record herein, Plaintiff's motion will be denied.

**BACKGROUND**

On April 10, 2008, Plaintiff brought suit alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. As relief, Plaintiff requested declaratory and injunctive relief, as well as "reasonable attorneys fees and other litigation costs reasonably incurred by Joseph Poett in prosecuting this case[.]" Complaint ("Compl.") (Document No.1) at 8-9. Plaintiff's Complaint was based upon his June 21, 2007 request to the Federal Bureau of Investigation ("FBI") for "all documents, and information in your possession or utilized by you in reaching the Decision to deny Joseph Poett access to select agents and toxins as set forth

herein." Compl., Ex. 1 at 2 (Document No. 1-2).[1] In requesting said documents and information, Plaintiff sought to "ascertain the identity of the organization he was allegedly involved with, the acts he allegedly took, and the dates and times of the alleged actions he took." Compl., ¶ 9. As stated in the June 21, 2007 request, Plaintiff's ultimate goal was "to defend himself against the charge of knowing involvement with an organization that engages in intentional crimes of violence[.]" Compl., Ex. 1 at 2.

The FBI responded to the June 21, 2007 FOIA request on October 15, 2007 by disclosing "[five] pages of documents pertaining to [Plaintiff's] request and a copy of the explanation of exemptions." Compl., Ex. 3 at 1. This response also advised Plaintiff of his right to file an administrative appeal. *Id*. Plaintiff filed an administrative appeal with the United States Department of Justice Office of Information and Privacy ("OIP"). On December 31, 2007, OIP affirmed the findings of the FBI, namely that Plaintiff's request was exempt from review under 5 U.S.C. § 552a(j)(2) and therefore only reviewable under 5 U.S.C. § 552. Compl., Ex. 5 at 1. OIP further found that certain information was classified under Executive Order No. 12958 and thus properly exempt from disclosure under 5 U.S.C. § 552(b)(1),[2] and that other documents were properly exempt under 5 U.S.C. § 552(b)(2) and 5 U.S.C. § 552(b)(7)(c). *Id*. OIP also advised Plaintiff that records responsive to his request may be located at the FBI St. Louis Field Office and recommended that Plaintiff consider filing a new request directed to the St. Louis Field Office, consistent with 28 C.F.R. §§ 16.3(a), 16.41(a) (2007). Compl., Ex. 5 at 2. On

---

[1] Plaintiff, a chemist employed by the Department of Agriculture, had been placed on administrative leave based upon a decision that he had been knowingly involved with an organization which engages in intentional crimes of violence. *Id.*

[2] OIP stated that although it found certain information to be classified under Executive Order No. 12958, it referred the information to the Department of Justice's Department of Review Committee for determination of whether the information should remain classified. *See* Compl., Ex. 5 at 1 (Document No. 1-2).

April 10, 2008, Plaintiff filed suit in this Court requesting a release of all records responsive to his June 21, 2007 FOIA request. (Defendant's Opposition to Plaintiff's Motion for Attorney's Fees and Costs of Suit) (Def. Opp'n.) (Document No. 25) at 3.

Meanwhile, in a concurrent action also filed by Plaintiff, the Department of Justice released, as part of the administrative record, a January 9, 1992 letter written by Plaintiff to the British Embassy acknowledging allegedly his inadvertent contact with the Irish Northern Aid Committee in America ("NORAID").[3] *See* Administrative Record ("A.R.") (Document No. 20) at 4, *Poett v. United States*, Civ. Act. No. 07-1374. In that action, the FBI filed a "Notice of FBI's Final Decision" in which it advised that it "no longer reasonably suspects Plaintiff of knowing involvement with an organization that engages in domestic or international terrorism or with any other organization that engages in intentional crimes of violence." Notice of FBI's Final Decision (Document No. 34) at 1, *Poett v. United States*, Civ. Act. No. 07-1374.

The court (Kollar-Kotelly, J.) Ultimately determined that:

Plaintiff's purpose in filing the instant FOIA action – *i.e.*, to be informed of the "date or date, time or times, place or places of his alleged involvement with said organization and a description of what acts he allegedly engaged in that made him suspect [as well as] the identity of the Organization Joseph Poett was allegedly involved with," Complaint, Ex. 1 at 2 [have] been satisfied.

January 18, 2010 Minute Order (Document No. 22) at 2.

---

[3] The administrative record in *Poett v. United States*, Civ. Act. No. 07-1374 was certified as "the true and correct copy of the Administrative Record regarding the denial of the application for Joseph Poett to have approval of access to select agents and toxins" by Dr. Robbin Weyant, the Director of the Division of Selected Agents and Toxins ("DSAT"). A.R. at 2-3, *Poett v. United States*, Civ. Act. No. 07-1374 (June 13, 2008)). The January 9, 1992 letter from Plaintiff to the British Embassy regarding his involvement with NORAID is included by Dr. Weyant as a part of this Administrative Record.

**CONTENTIONS OF THE PARTIES**

Plaintiff contends that the release of the 1992 letter in the related action, *Poett v. United States*, Civ. Act. No. 07-1374, constituted a "a voluntary or unilateral change in position by the agency" since the Department of Justice had previously insisted that the letter was exempt from disclosure. Plaintiff's Memorandum of Law in Support of his Motion ("Plaintiff's Memorandum") (Document No. 16) at 9-10. Furthermore, the cause of this change in position was the initiation of this suit. *Id*. Plaintiff avers that he therefore has "substantially prevailed" and is thus eligible for attorney's fees and costs. *See* 5 U.S.C. § 552(a)(4)(E)(i).

Additionally, Plaintiff asserts that he is entitled to attorney's fees and costs because the balance of the relevant factors runs in his favor. Plaintiff's Memorandum at 12. Plaintiff avers that this action helped the general public protect its ability "to keep watch to ensure their cherished Constitutional Rights are not being lost to them." *Id*. at 12, 14. Thereby, Plaintiff contends that this FOIA action resulted in a public benefit and was a substantial claim. *Id*. at 10-11. Moreover, according to Plaintiff, his "continued employment as a Chemist for USDA is now secure," and thus this action has granted him a commercial benefit. *Id*. at 12-13. Plaintiff then contends that his interest in obtaining the requested records "was to force the Agency to obey the mandates of the FOIA." *Id*. at 13. By doing so, Plaintiff would "protect his property interest . . . in his continued, unfettered employment with the USDA." *Id*. at 13. Finally, Plaintiff states that "Defendant's withholding of the Plaintiff's 1992 letter to the British Embassy and FBI documents generated in investigating Joseph Poett in 1992 were not backed by a reasonable basis in law." *Id*. at 13-14.

Defendant opposes the grant of attorney's fees and costs on the grounds that Plaintiff is not entitled to such fees.[4] Defendant's Opposition to Plaintiff's Motion for Attorney's Fees and Costs of Suit ("Defendant's Opposition") (Document No. 25) at 5. First, Defendant asserts that the disclosure of Plaintiff's requested documents conferred no public benefit, because the documents relate only to Plaintiff, and his stated purpose in requesting the documents was personal. *Id*. at 9. Defendant further argues that this allegedly personal interest precludes a grant of fees in this case. *Id*. at 9-10. Finally, Defendant avers that the Government's position is supported by a reasonable basis in law, because Plaintiff's request was limited itself FBI headquarters, and the letter which was of interest to Plaintiff was not located there. *Id*. at 11. Therefore, according to Defendant, the only reason why Plaintiff did not receive the document was because he requested it from the wrong office. *Id*. at 12.

**APPLICABLE STANDARD**

The Court's determination of the appropriateness of attorney fees and costs under FOIA is two-pronged. First, the Court must find that the plaintiff is eligible for attorney fees and costs. If the Court finds that the plaintiff is indeed eligible, then the Court must determine that the plaintiff is entitled to attorney fees and costs. Any award of fees, however, is subject to the Court's discretion. *Barnard v. Dept. of Homeland Security*, 656 F. Supp. 2d 91, 98 (D.D.C. 2009) (citing *Nationwide Bldg. Maint. v. Sampson*, 559, F.2d 704, 705-6 (D.C. Cir. 1977)).

**A.     *Eligibility*[5]**

---

[4] At a hearing on May 27, 2010, Defendant through counsel, conceded that Plaintiff is eligibile for an award of attorney fees and costs.

[5] *See* n. 4, *supra*.

Eligibility for attorney fees and costs is predicated upon 5 U.S.C. § 552(a)(4)(E), which authorizes "reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The section goes on to define the terms under which a complainant substantially prevails as relief obtained either (1) through "a judicial order, or an enforceable written decree, or consent decree," 5 U.S.C. § 552(a)(4)(E)(ii)(I); or (2) through a "voluntary or unilateral change in position by the agency, if the claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II). Agency disclosure of the requested documents would qualify as such a change in position. *See N.Y.C. Apparel F.Z.E. v. United States Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008) (internal citation omitted) ("[A] plaintiff is deemed to have 'substantially prevailed' for the purposes of § 552(a)(4)(E) if the litigation substantially caused the requested records to be released.").

If the agency does release the documents, a plaintiff must then demonstrate the existence of a causal nexus between the bringing of a civil action and the release of the documents. *See Judicial Watch Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 173 (D.D.C. 2008) (quoting *Republic of New Afrika v. Federal Bureau of Investigation*, 117, 118-19 (D.D.C. 1986)) ("The causation inquiry is focused on whether 'the prosecution of the action could reasonably be regarded as necessary to obtain the information and that a causal nexus exists between the action and the agency's surrender of that information.'"). The court must look beyond the temporal relationship between the filing of the complaint and the subsequent release of requested documents. *See Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 173 (D.D.C. 2008) (quoting *Weisberg v. United States Dept. of Justice*, 745 F.2d 1476, 1496 (D.C.

Cir. 1984)) ("Though certainly a salient factor, 'the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation.'"). Conversely, "the mere fact that a FOIA requester might have ultimately received the documents in question is not a sufficient basis for finding that it has not substantially prevailed." *Fund for Constitutional Government v. National Archives and Record Service*, 656 F.2d 856, 871 (D.C. Cir 1981).

Additionally, a plaintiff's simultaneous pursuit of a separate claim concerning the same underlying facts as his FOIA claim poses a threat to the establishment of causation. *See Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984) ("In addition, because plaintiffs were simultaneously pursuing non-FOIA claims concerning matters related to the information sought, it is reasonable to infer that documents would have been produced in any case during the normal course of discovery."). Concurrent claims regarding the same underlying set of facts raise uncertainty about which litigation substantially caused the document's release. *Mendez-Suarez v. Veles*, 698 F. Supp. 905, 907 (N.D. Ga. 1988).

**B.      *Entitlement***

In the determination of a litigant's entitlement, the Court must consider four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; 3) the nature of the plaintiff's interest in the records and (4) whether the government has a reasonable basis for withholding the requested information. *Cotton v. Heyman*, 63 F.3d 1115, 1117 (D.C. Cir. 1995). No one factor alone is necessarily dispositive; however, "the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure."[6] *Davy v. C.I.A.*, 550

---

[6] The fourth factor can be dispositive if the government is correct as a matter of law. *Davy*, 550 F.3d at 1162. If the government's position only has a colorable basis in law, then this factor will be weighed along with the other three in making the determination of entitlement. *Id*.

F.3d 1155, 1159 (D.C. Cir. 2008) (citation omitted).

The public-benefit factor can be gauged by considering "whether plaintiff's victory is likely to add to the fund of information that citizens may use in making vital political choice." *Cotton*, 63 F.3d at 1120. The Court may also consider "the likely degree of dissemination and the public benefit that can be expected from a particular disclosure." *Horsehead Indus. v. U.S. E.P.A.*, 999 F. Supp. 59, 68 (D.D.C. 1998).

The second and third factors, commercial benefit and plaintiff's interest, are "closely related and often considered together." *Tax Analysts v. United States Dept. of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). Because of the decidedly public aims of the FOIA statute, the FOIA attorney fees provision "was designed to lower the . . . often insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA." *Id.* (quoting *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1363-64 (D.C. Cir 1977)). "Accordingly, when a litigant seeks disclosure for a commercial benefit or out of other personal motives, an award of attorney fees is generally inappropriate." *Id*; *see also Fenster v. Brown*, 617 F.2d 740, 743 (D.C. Cir. 1979) ("Section 552(a)(4)(E) was not intended to compensate FOIA complainants who have a private commercial interest in disclosure which is sufficient incentive to pursue their claim through the courts.").

To satisfy the fourth requirement, a reasonable basis in law, the government "need only have a 'colorable basis in law'" for the court to consider it. *Cotton*, 63 F.3d at 1121 (quoting *Chesapeake Bay Found. v. United States Dept. of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993); *see also Cuneo*, 553 F.3d at 1366 ("What is required is a showing that the government had a reasonable basis in law for [its position] and that it had been recalcitrant in its opposition or

otherwise engaged in obdurate behavior.").

If the balance of these four factors favors the Government, then the claim for attorney fees is insubstantial. *See Dasta v. Lappin*, 657 F. Supp. 2d 29, 33 (D.D.C. 2009) (linking insubstantiality to a plaintiff with predominately personal interests in the requested information). Determination of whether a claim is insubstantial is closely linked with the breadth of interests at issue in the given case. *See Sliney v. Federal Bureau of Prisons*, 626 F. Supp. 2d 43, 48 (D.D.C. 2009; *see also Bureau of Land Mgmt.*, 562 F. Supp.2d at 172-174.

**DISCUSSION**

**A.** *Eligibility*

Historically, an inquiry into a plaintiff's eligibility for fees under FOIA is "largely a question of causation." *Weisberg v. United States Dept. of Justice*, 745 F.2d 1476, 1496 (D.C. Cir. 1984). The OPEN Government Act of 2007 ("OGA") eliminated the requirement of judicial imprimatur but left the causation requirement intact. *See N.Y.C. Apparel F.Z.E.*, 563 F. Supp. 2d at 221 (internal citation omitted) (emphasis added) (explaining that the OGA "essentially codifies the so-called 'catalyst theory' . . . under which a plaintiff is deemed to have 'substantially prevailed' for the purposes of § 552(a)(4)(E) if the litigation *substantially caused* the requested records to be released"); *see also Bureau of Land Mgmt.*, 562 F. Supp. 2d at 173 (internal citation omitted) ("The causation inquiry is focused on whether 'the prosecution of the action could reasonably be regarded as necessary to obtain the information and that a causal nexus exists between the action and the agency's surrender of that information.'"); *see also Sliney*, 626 F. Supp. 2d at 47 (quoting *Wildlands CPR v. United States Forest Serv.*, 558, F. Supp. 2d 1096,

1098 (D. Mont. 2008)) (emphasis added) ("The catalyst theory assumes that a voluntary or unilateral change in an agency's position is *induced by the complainant's lawsuit*.").

Here, Defendant has conceded eligibility; the undersigned assumes, without deciding, that Plaintiff is eligible for an award.[7]

**B.**     *Entitlement*

Applying the four-factor test by which entitlement is evaluated, the undersigned finds that Plaintiff is not entitled to attorney's fees and costs. *See Cotton,* 63 F.3d at 1117 (delineating the four-factor test). The undersigned finds that weight of these four factors leans so heavily in favor of Defendant that it is unnecessary to consider "applicable criteria from the older body of equitable decisions on attorneys' fees." *Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir. 1978); *cf. Nationwide Bldg. Maint., Inc., v. Sampson*, 559 F.2d 704, 705 (D.C. Cir. 1977) (emphasis added) (stating that 5 U.S.C. § 552(a)(4)(E) "contemplates a reasoned exercise of the courts' discretion taking into account all *relevant* factors.").

First, an agency's demonstration of "a lawful right to withhold disclosure," precludes the Court from awarding attorney fees. *Davy*, 550 F.3d at 1159. In the instant case, the two declarations of David M. Hardy serve as such a demonstration. Plaintiff sent both of his FOIA requests to FBI Headquarters. *See* Notice of Filing of Vaughn Index (Document No. 10-2) Ex. B

---

[7] Simultaneous claims pose a significant threat to the establishment of causation. *See Simon,* 587 F. Supp. at 1032 ("In addition, because plaintiffs were simultaneously pursuing non-FOIA claims concerning matters related to the information sought, it is reasonable to infer that documents would have been produced in any case during the normal course of discovery."). In finding that the plaintiff had not substantially prevailed, the *Mendez-Suarez* court stated:

> It is not clear from the record whether the requested information was released because of plaintiff's FOIA requests or because of discovery requests made pursuant to Rule 34 of the Federal Rules of Civil Procedure . . . In any event, the pendency of the discovery requests conclusively demonstrates that the information sought was available through means other than the filing of a FOIA claim.

*Id*. at 907.

at 1; *see also* Second Declaration of David M. Hardy ("Second Decl. of David M. Hardy") (Document No. 17-1) at ¶ 3. "For records held by a field office of the Federal Bureau of Investigation, . . . you must write directly to that FBI . . . field office address." 28 C.F.R. § 16.3(a).[8] The Second Declaration of David M. Hardy specifically states that "[t]he January 9, 1992, letter written to the British Ambassador by Plaintiff and potentially other documents pertaining to Plaintiff, are located at other FBI Field Offices." Second Decl. of David M. Hardy at ¶ 9. Furthermore, the First Declaration of David M. Hardy describes in reasonable detail, the organization of the FBI's Central Record Service, and the particular search methods applied to Plaintiff's request. First Declaration of David M. Hardy ("First Decl. of David M. Hardy") (Document No. 10-1) at ¶¶ 13-18; 19-20. The declarations are relatively detailed and non-conclusory, and therefore without evidence to the contrary, they are afforded a presumption of good faith. *See Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982); *see also Safecard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Plaintiff has not provided "'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. United States Dept. of Justice*, 2010 WL 1007858, at *4 (D.D.C., March 22, 2010) (quoting *Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

Furthermore, Plaintiff does not persuade the court that any of the other factors warrant a finding that he is entitled to an award of fees and costs. Regarding the public benefit factor, the

---

[8] In her response to Plaintiff's Appeal of the FBI's decision to withhold documents, Associate Director Janice Gallie McLeod alerted Plaintiff of the potential existence of responsive documents at the St. Louis Field Office of the FBI. Notice of Filing of Vaughn Index Ex. F at 2. The record does not indicate that Plaintiff actually filed a FOIA request with the St. Louis Field Office or any other local Field Office.

court cannot conclude that information consisting of "all documents and information . . . utilized by [FBI] in reaching the Decision to deny Joseph Poett access to select agents and toxins as set forth herein," Compl. Ex. A at 1, is likely to add to the fund of public information or result in considerable public dissemination or benefit. *See Cotton*, 63, F.3d at 1120; *see also Horsehead Indus. v. United States Environmental Protection Agency*, 999 F. Supp. 59, 68 (D.D.C. 1998). Conversely, it seems more likely that the disclosed information only benefits Plaintiff, thereby negating the public-benefit factor. *See Maydak v. United States Dept. of Justice*, 579 F. Supp. 2d 105, 108 (D.D.C. 2008) (finding that the public-benefit factor can be negated if a court finds that "the plaintiff is the only beneficiary of the released records").

This becomes even clearer upon considering that throughout the record, Plaintiff states that his immediate goal in obtaining the 1992 letter was to "ascertain the identity of the organization he was allegedly involved with, the acts he allegedly took, and the dates and times of the alleged actions he took." Compl. ¶ 9. Moreover, as stated in the June 21, 2007 request, Plaintiff states that his ultimate goal was to "defend himself against the charge of knowing involvement with an organization that engages in intentional acts of violence." Compl. Ex. 1 at 2. Each of these stated goals is entirely personal in nature, and Plaintiff identified them as such in his October 30, 2007 FOIA Appeal. Notice of Filing of Vaughn Index Ex. D at 4 ("Nor is it Joseph Poett's intention to disseminate any information obtained. Rather it is his intent to disprove the allegations lodged against him to protect himself and his family.").

Plaintiff's goals do not appear to be commercial, and for that reason he does not automatically fail to satisfy the commercial benefit factor; however, the lack of a public benefit inherently illuminates the fact that Plaintiff's relationship to the disclosed document is of a

private and personal nature.  For that reason, Plaintiff fails to satisfy the third factor.  "When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate."  *Cotton*, 63 F.3d at 1120.  Furthermore, a litigant's interest does not have to be strictly commercial to preclude the necessity of fees.  *Tax Analysts*, 965 F.2d at 1095.  As stated in the complaint, Poett's goal in obtaining the requested documentation was to "defend himself against the charge of knowing involvement with an organization that engages in intentional acts of violence . . ."  Compl., Ex. A at 1.  As such, not only does the disclosure of Poett's requested documents fail to provide a public benefit, but it also serves a purely private and personal goal, thereby negating the third prong of the entitlement test.

**CONCLUSION**

For all the foregoing reasons, the undersigned finds that Plaintiff has failed to demonstrate, in accordance with the applicable standards, that he is entitled to an award of attorney's fees and costs.  It is therefore, this 30th day of September, 2010,

**ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs of Suit (Document No. 23) is **DENIED**.

```
                                      /s/
```
DEBORAH A. ROBINSON
United States Magistrate Judge